UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHIVON MARIE WEAVER,

                          Plaintiff,

v.                                                                CASE # 18-cv-01226

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | BRANDI CHRISTINE<br>SMITH, ESQ.<br>KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | ARIELLA RENEE ZOLTAN, ESQ.<br>AMY ELIZABETH HAWKINS<br>MORELLI, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the Plaintiff's motion for judgment on the administrative

record is **DENIED**, the Defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.  **RELEVANT BACKGROUND**

   A.  **Factual Background**

Plaintiff was born on May 17, 1980, and graduated high school. (Tr. 199, 203). Generally, Plaintiff's alleged disability consists of manic depression and type II diabetes. (Tr. 202). Her alleged onset date of disability is December 1, 2013. (Tr. 218). Her date last insured is March 31, 2017. (Tr. 191). She has no past relevant work. (Tr. 21, 203).

   B.  **Procedural History**

On June 8, 2015, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (Tr. 180-183). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 20, 2017, Plaintiff appeared before the ALJ, Anthony Dziepak. (Tr. 9). On January 24, 2018, ALJ Dziepak issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 7-22). On September 17, 2018, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-4). Thereafter, Plaintiff timely sought judicial review in this Court.

   C.  **The ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2017.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 1, 2013 through her date last insured of March 31, 2017 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairment: an affective disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she was limited to performing simple repetitive work tasks in a non-production/fast paced setting (no assembly line type work) involving no public interaction and only occasional interaction with supervisors and coworkers. She is unable to perform team/tandem collaborative type work, but is able to make simple work-related decisions, and adapt to simple changes in a routine work setting.

6. The claimant has no past relevant work (20 CFR 404.1565).

7. The claimant was born on May 17, 1980, and was 36 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education, and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 1, 2013, the alleged onset date, through March 31, 2017, the date last insured (20 CFR 404.1520(g)).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to evaluate Plaintiff's pseudotumor cerebri. (Dkt. No. 12 at 1 [Pl.'s Mem. of Law]). Second, the ALJ failed to evaluate Dr. Seibert's opinion. (Dkt. No. 12 at 1).

### B. Defendant's Arguments

In response, Defendant makes two arguments. Generally, Defendant argues that the ALJ's RFC finding was supported by substantial evidence but specifically that Plaintiff failed to establish "pseudomotor celebri" as a medically determinable severe impairment and that Dr. Seibert's statement was not a medical opinion that related to the relevant time period. (Dkt. No. 14 at 5 [Def.'s Mem. of Law]).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity'

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Evaluation of Pseudotumor Cerebri Impairment[1]

The ALJ found Plaintiff had the severe impairment of an affective disorder and non-severe impairments of obesity, diabetes, gastroesophageal reflux disease, hypertension, hyperlipidemia, vitamin D deficiency, history of migraine headaches, and obstructive sleep apnea. (Tr. 13). Plaintiff argues the ALJ erred at step two by not evaluating Plaintiff's diagnosis and treatment for pseudotumor cerebri. (Dkt. No. 12 at 15).

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). Although the Second Circuit has held that this step is limited to "screen[ing] out *de minimis* claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013). Further, the plaintiff bears the burden of presenting evidence establishing severity. Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing Miller v.

---

[1] Pseudotumor cerebri occurs when the pressure inside the skull increases for no obvious reasons. Symptoms mimic those of a brain tumor and may include headache, whooshing sound in the head, nausea, dizziness, double vision, loss of vision, and pain in the neck, shoulder or back. The cause is unknown. *See* https://www.mayoclinic.org/diseases-conditions/pseudotumor-cerebri/symptoms-causes/syc-20354031 (last visited 12/18/19).

Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. §§ 404.1512(a), 416.912(a).

In this case, Plaintiff has not met her burden of presenting evidence that the impairment is severe. *Bowen v. Yuckert*, 482 U.S. 137, 142, n.5 (1987), *see Woodmancy v. Colvin*, 577 F. App'x 72,74 (2d Cir. 2014)(citing *Green-Younger v. Comm'r*, 335 F.3d 99, 106 (2d Cir. 2003)). Plaintiff did not allege disability due to pseudotumor cerebri on her initial application or at the hearing. (Tr. 202, 502). Plaintiff's representative reiterated at the hearing that the Plaintiff's mental health was the primary issue and mentioned multiple mental health diagnoses by name, but never the diagnosis of pseudotumor cerebri as an impairment that prevents her from performing a full-time job. (Tr. 32, 34).

To be established as a medically determinable impairment, an acceptable medical source would need to diagnose the impairment. *See* 20 C.F.R. § 404.1513(a), (d). The record only contains a statement by a physician assistant, Mr. Maloney from DENT Neurological Institute, on November 12, 2015, that Plaintiff had a "history of pseudotumor cerebri." A physician assistant is not an acceptable medical source within the meaning of the Commissioner's regulations; thus, his opinion could not establish the existence of a medically determinable impairment. *See* SSR 06-3p. In December 2015, Mr. Maloney prescribed Topamax and instructed Plaintiff to return in two to three weeks. (Tr. 643, 653). There is no evidence that Plaintiff returned to Mr. Maloney or DENT. When Plaintiff saw her primary care doctor, Dr. Fanos, in April 2016, she did not report head pressure or vision problems. (Tr. 634). The prescription by Mr. Maloney was not included in her list of current medications and pseudotumor cerebri was not included in the list of chronic diagnoses. (Tr. 634-638).

7

Even if an acceptable medical source had diagnosed the impairment, a medically determinable impairment must result from an anatomical or physiological abnormality shown by medically acceptable clinical or laboratory techniques. *See* 20 C.F.R. §404.1508 (noting that an impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statements."). Here, there is no such evidence, but rather objective imaging including a head CT and brain MRI which were totally normal (Tr. 641-642, 647, 649, 661), as were Plaintiff's neurological, mental status, and eye exams. (Tr. 641-642, 652, 656).

Significantly, Plaintiff has failed to show any limitations to her ability to work because of the pseudotumor cerebri diagnosis. Plaintiff has not argued the ALJ erred in finding the migraine headaches a non-severe impairment, which were the primary symptom that led her to seek emergency room treatment and subsequent referral to a neurology specialist. (Tr. 654-655, 643). The ALJ appropriately discussed the history of diagnosed migraine headaches concluding from the evidence that Plaintiff has remined neurologically intact and CT scans and magnetic resonance imaging studies of the brain have been negative for acute abnormalities. (Tr. 13). Additionally, he noted that the migraines were reported in October 22, 2015 to be under control and not requiring medication on an ongoing basis prior to the date last insured. (Tr. 14).

In sum, Plaintiff failed to meet her burden to demonstrate that she had a severe medically determinable impairment related to pseudotumor cerebri and the ALJ properly addressed the migraine headaches at step two of the sequential evaluation.

### B. Post-DLI Statement from Treating Source

Plaintiff next contends the ALJ erred by not addressing the opinion of psychologist Dr. Seibert, which post-dated the date last insured (DLI). (Dkt. No. 12 at 19). Dr. Seibert treated the

Plaintiff on two occasions prior to the date last insured. (Tr. 779). On September 7, 2017, he wrote a letter to the Plaintiff's attorney with "suggestions" for her impending court appearance and questioning at the hearing. (Tr. 779). He noted his previous diagnosis of bipolar disorder and stated that Plaintiff sometimes experienced "mental confusion" that could limit her capacity for attention, concentration, and information processing at the hearing; suggested plainly worded questions, repeated as necessary; and recommended that Plaintiff's husband be present at the hearing. (Tr. 779). The ALJ understandably did not address this evidence in the decision and it does not warrant a remand.

To be eligible for disability insurance benefits under Title II, a claimant must prove that she became disabled prior to the expiration of her disability insured status. See 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.130, 404.131. The letter from Dr. Seibert post-dated the DLI by five months (Tr. 13) and did not relate to the ALJ's determination whether Plaintiff was disabled on or before March 31, 2017. (Tr. 13). *See Vilardi v. Astrue*, 447 F.App'x 271, 272 (2d Cir. 2012) (evidence from seven months after the relevant time period "is of little value"). The letter clearly only addresses Plaintiff's current functioning and makes no reference to abilities prior to the DLI. *See Vitale v. Apfel*, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999) (noting that "the existence of a pre-existing disability can be proven by a retrospective opinion" if it "refer[s] clearly to the relevant period of disability" and does "not simply express an opinion as to the claimant's current status").

It is also well established that an ALJ is not required to discuss all evidence in the record "so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (internal quotation marks

omitted)).The ALJ did properly account for the diagnosis in Dr. Seibert's letter and also considered the treatment notes that pertained to the relevant period. The ALJ found the severe impairment of affective disorder (Tr. 13) and cited to symptoms and medications found in the exhibit containing Dr. Seibert's records. (Tr. 18). Plaintiff overstates the treatment provided by Dr. Seibert by stating he treated Plaintiff "throughout the insured" period, when in fact, there were only two visits. (Tr. 773-774, 776). Notably, there was no mental status testing at either visit but rather a reporting of Plaintiff's subjective complaints. (Tr. 773-774, 776). As stated by the ALJ in support of his RFC, Dr. Seibert's notes included admissions by the Plaintiff that she was able to care for children without difficulty, including walking them to school and playing with them. (Tr. 14-15, 18). Plaintiff also told Dr. Seibert that during the day she was busy with her children and did not feel depressed. (Tr. 14, 18, 773-774).

Plaintiff argues that both Dr. Seibert's letter and the consultative examiner's opinion were consistent with the mental health treatment records indicating Plaintiff struggled with anxiety and feelings of being overwhelmed. (Tr. 12 at 21). Even if Dr. Seibert's letter was a retrospective opinion about functional abilities, it is still not consistent with the record or other opinion evidence that was appropriately addressed and weighed.

On November 3, 2014, Yu-Ying Lin, Ph.D., performed a psychological evaluation and opined that Plaintiff's psychiatric conditions did not appear significant enough to interfere with the ability to function on a daily basis; that she could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, learn new tasks, and perform complex tasks with supervision; that she had mildly to moderately limited ability to maintain a regular schedule; that she was moderately to markedly limited in appropriately dealing with stress; and that she had mildly limited ability to make decisions and relate adequately

with others. (Tr. 20, 499-500). The ALJ afforded the opinion partial weight citing mental status exam findings, treatment, reported activities and reports of improvement. (Tr. 20). Although only partial weight, this exam and opinion constituted substantial evidence supporting the ALJ's RFC assessment. *See Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016) (The opinion of a consultative examiner may constitute substantial evidence in support of an ALJ's decision).

Further, contrary to Plaintiff's assertion that the RFC assessment is not based on substantial evidence because the ALJ did not give significant weight to any particular medical opinion, the ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). The Second Circuit has also long understood that a medical opinion is not required to support an RFC finding. *Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (explaining that an ALJ looks to "all of the relevant medical and other evidence" including relevant medical reports, medical history, and statements from the claimant when assessing an applicant's RFC).

The ALJ's RFC was supported by substantial evidence, in addition to the consultative examiner's opinion addressed above. The mental status exams in the record were inconsistent with Plaintiff's reports of disabling symptoms of confusion and inability to attend and concentrate. Instead, the mental status exams, as diligently listed by Defendant in its brief, showed that she was alert, oriented, calm, cooperative, engaging, pleasant, organized, friendly, linear, logical coherent, clear, and goal-directed with appropriate eye contact and normal mood and affect; mental status exams were negative for thought blocking or insertion, psychomotor agitation or slowing, mania,

flight of ideas, circumstantial or tangential thoughts, anhedonia, impulsivity, paranoia, delusions, ongoing hallucinations, and loosening of associations; and examiners found Plaintiff's insight and judgment were intact, as was memory, and her attention and concentration were intact, good, adequate, or appropriate (Tr. 18; Dkt. No. 14 at 14). The ALJ also discussed the improvement in Plaintiff's symptoms with treatment. (Tr. 19, 769, 840, 861).

Indeed, the substantial evidence standard is so deferential that there could be "two contrary rulings on the same record [and both] may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec* (citing *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966)). "[O]nce an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder *would have to conclude otherwise*." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d at 448 (emphasis in original; internal quotation omitted). Some of Plaintiff's arguments are a disagreement with how the ALJ evaluated the evidence. (*See* Dkt. No. 13). When substantial evidence of record supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision. *See Vilardi v. Astrue*, 447 Fed. App'x 271, 272 (2d Cir. Jan. 10, 2012) (summary order); *Rouse v. Colvin*, No. 14-CV-817S, 2015 WL 7431403, at *6 (W.D.N.Y. Nov. 23, 2015) (unpublished). In this case, the ALJ weighed the medical evidence, including treatment notes, consultative examinations, objective findings, medical opinions, and Plaintiff's testimony to reach an RFC determination that reflected his analysis of the credible evidence of record. (Tr. 7-22).

**ACCORDINGLY, it is**

    **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is

        **<u>DENIED</u>;** and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is

**GRANTED**.

Dated: December 18, 2019　　　　　　　　　　_J. Gregory Wehrman_
Rochester, New York　　　　　　　　　　　　HON. J. Gregory Wehrman
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge